TRUE, Appellant, vs. THE BANKERS' LIFE ASSOCIATION OF MINNESOTA, Respondent.

*November 26 — December 16, 1890.*

*Life insurance : Assessments: Request for payment after due: Forfeiture: Estoppel: Agreement to give notice.*

1. A life insurance company requested payment of an assessment, stating that it was overdue but assuring the policy-holder that if it was paid he would remain a member of the company. A few days later the assessment was paid. *Held*, that the company could not thereafter insist that the policy was forfeited because the assessment had not been paid prior to said request, nor require a certificate of health as a condition of reinstating the policy-holder.

| 78   287|
| 89   658|
| 78   287|
| 94   547|
| 78   287|
|103   432|

True vs. The Bankers' Life Ass'n of Minnesota.

2. The secretary of a life insurance company assured the plaintiff in writing that certain notices of assessments would be given before there would be any forfeiture of a policy. Relying upon such assurance the plaintiff took policies. According to the company's articles of incorporation, certain assessments became payable without any notice being given as the secretary had promised. These articles were referred to in the policies, but were not attached thereto, and the plaintiff had no knowledge of their provisions. *Held,* that the plaintiff was entitled to rely upon the secretary's promise until expressly notified to the contrary.

APPEAL from the Circuit Court for *Bayfield* County. The case is stated in the opinion. The plaintiff appeals from a judgment in favor of the defendant.

For the appellant there was a brief signed by *James N. True, pro se,* and *L. S. Larson,* of counsel, and oral argument by *Mr. True.*

For the respondent there was a brief by *Graham & Wilson,* and oral argument by *C. E. Buell.*

TAYLOR, J.   This is an action to recover from the defendant money which the plaintiff paid to it upon life insurance policies issued to him by said corporation, on the ground that said corporation had unlawfully forfeited his policies of insurance issued to him, and had refused to longer recognize him as entitled to the benefits of an assured person under said policies.   The claim made by the plaintiff was that the corporation had unlawfully canceled his policies and excluded him as a beneficiary of said corporation, and for that reason he had, before the commencement of this action, demanded of said corporation all the money he had paid to it upon his policies of insurance, and that it had refused to return to him such money or any part of it.

The corporation admits the insurance of the plaintiff, as alleged in his complaint; admits that it had received of the plaintiff upon such policies the sum of $326.91, and alleges that such policies were duly declared forfeited by the com-

pany by reason of the failure of the plaintiff to pay a certain sum of money which became due to such corporation under its laws and by the terms of said policies; and that by such laws, and by the terms of said policies, when said policies were duly forfeited the corporation was entitled to retain as its own all the moneys theretofore paid by the plaintiff to said corporation upon such policies.

The action was tried by the court without a jury, and the court found that the policies held by said plaintiff in said corporation had been duly forfeited by the corporation by reason of the failure of the plaintiff to pay the sum of $15.30, an assessment lawfully made by said corporation upon the policies held by the plaintiff, and which became due from the plaintiff to said corporation on the 26th of September, 1887, and payment thereof was not made or tendered by the plaintiff until on the 13th day of October, 1887. The court also found that the corporation duly notified the plaintiff that such assessment had been made upon his policies, and that such assessment was due and payable on or before the 26th of September, 1887.

In the determination of this case, we shall proceed upon the theory that the corporation had the right, under the rules, by-laws, and conditions of the policies held by the plaintiff, to forfeit said policies of the plaintiff for a failure to pay assessments made thereon by the corporation, if not paid within the time prescribed by such rules, regulations, and by-laws, and that after such forfeiture the plaintiff would not be entitled to be restored to his rights in said policies, except upon conforming with the rules and regulations of said corporation declaring how such restoration should be made; and upon the theory that the plaintiff has not strictly conformed to such rules and regulations; and also upon the theory that if the policies were duly forfeited the corporation has the right to retain as its own all money paid to it by the plaintiff on such policies.

After a careful consideration of the evidence, we have concluded that the learned circuit judge erred in finding that the plaintiff had forfeited his rights under his policies by not paying the said assessment, $15.30, on or before the 26th day of September, 1887. Our reasons for coming to a conclusion different from that of the learned judge upon the question of forfeiture are the following:

The answer admits, and the evidence clearly shows, that the corporation insured the plaintiff on the 15th of March, 1884, and on that day issued to him three certificates of insurance, each certificate insuring him in the sum of $2,000, and that from that date until the assessment of $15.30, made in September, 1887, and which it is claimed became due the 26th of September, 1887, the plaintiff had paid all assessments and dues upon said policies promptly, and on the said 26th of September, 1887, the plaintiff had money in the possession of said corporation which was applicable to the payment of said assessment of $15.30, the sum of $10, which was well known to the officers of said corporation. This fact would tend to show that there was no intentional neglect to pay the assessment made in September, 1887, in full on the part of the plaintiff; but it would probably be no defense in an action at law to prevent the defendant from setting up a forfeiture, if he in fact failed to pay in time. This assessment of $15.30 is what is called a "periodical assessment," and it is alleged in the answer that it was mutually understood and agreed between the plaintiff and defendant when the policies were issued that "the periodical assessment was to be annually the sum of $5.10, and the casualty assessment on account of the death of each member was to be sixty-eight cents, on account of and for each of the three said memberships; that is to say, said plaintiff's aggregate annual periodic assessment was to be $15.30, and the same was to be paid by said plaintiff, at said defendant's principal office in the city of St. Paul, in

the state of Minnesota, on or before the fourth Monday in September in each year, without demand, and said plaintiff's annual casual assessment upon the death of each member was to be $2.04, and the same was to be paid to said defendant at its principal office, aforesaid, within thirty days after demand made therefor, according to said section 11 set out in Exhibit B.

" The aggregate periodic assessment of $15.30, which was duly made, and became due and payable to said defendant, under and according to said articles of incorporation, the said three membership certificates, as aforesaid, on the fourth Monday, that is to say, the 26th day of September, A. D. 1887, was not paid by said defendant on or before that date, and in consequence thereof said plaintiff thereupon ceased to be a member of said defendant, and he has not at any time since said 26th day of September, A. D. 1887, been a member of said defendant, or entitled to any of the rights, powers, or privileges of a member thereof."

The allegations contained in the first paragraph above quoted from the answer are not found to be true by the court in his findings of fact. The fourteenth finding of fact reads as follows, viz.: " The allegations of the pleadings in this action, except as therein admitted or herein found to be true, have not been proved to the satisfaction of this court, and are therefore found to be untrue." The claim, therefore, that there was an agreement or understanding that the periodical assessments on the plaintiff's three policies or certificates would be in the aggregate the sum of $15.30, is not sustained by the evidence.

The certificates or policies issued to the plaintiff in this case read as follows: " This certifies that the *Bankers' Association of Minnesota,* upon application of *James N. True,* of Spring Valley, in the state of Minnesota, and upon his representations therein contained, has on this 15th day of

March, A. D. 1884, admitted him to one full membership in said association, and in virtue thereof he shall participate in and enjoy all the benefits conferred by said association so long as he shall, in good faith, perform the duties and obligations incident to such membership, according to sections 6, 7, 9, 11, and 13 of the articles of incorporation of such association. The said association, in consideration that said member has made the guaranty deposit and payment called for by said articles, hereby covenant and agree to and with him, his family and the representatives thereof designated in said application, and his successors, that said association, after the death of said member and within sixty days after due proof thereof furnished thereto, shall and will truly pay at the office thereof in St. Paul, in the state of Minnesota, into the family of said deceased, upon the receipt of said representatives thereof, the sum of $34, together with a sum of money equal to two per cent. of the guaranty trust fund then held by said corporation in pledge thereof, not exceeding the sum of $2,000, provided said representations, so far as material, were true or believed to be so when made. And provided further that said member shall have in good faith paid all the periodic and casual assessments imposed upon him during his life, pursuant to said articles. In testimony whereof said corporation has caused the names of its president and secretary to be signed, the name of the chairman of the board of trustees to be countersigned, and its corporation seal to be affixed."

There is no evidence in the case tending to show that the articles referred to in the certificates or policies were attached to such certificates, and the plaintiff testifies that he knew nothing about said articles and had never seen them until he saw them in the answer in this action. Immediately before these certificates were issued to the plaintiff, and in answer to a letter written to the company, the

secretary of the company wrote to the plaintiff the following letter, viz.:

"St. Paul, Minnesota, February 18, 1884.

"*J. N. True, Esq., Spring Valley, Minn.*— Dear Sir: Yours of the 16th at hand. In reply to your inquiries, would say: 1st. Any default in any payment due acts as a forfeiture of rights, as the company cannot know whether the fault was wilful or unintentional. To meet the latter class of cases, however, every reasonable provision is made for the reinstatement of a delinquent member. 2d. In the matter of the assessments of *either* class, notice is sent by mail from this office to each member of payment due thirty days after date, and collection is at same time sent to the depository where members' dues are payable. If at expiration of thirty days payment is not made, the delinquent member goes on the delinquent list, and notice of delinquency is sent him from here. During his second thirty days he has the privilege of reinstating himself without penalty, by simply paying up his arrearages. Then follow sixty days in which he can reinstate by paying up and furnishing a health certificate. Further than this a member can always protect himself by making a deposit either with the company or his depository. There is no danger of delinquency with ordinary business prudence. 3d. Change of residence or occupation has no effect upon the policy. A member has the right to select any bank in the world as his depository. The company does not desire members to lapse, and has arranged for a greater leniency than is at all usual with other companies.

"Hoping to receive your application, I am yours truly,

"R. R. Dorr, Sec'y."

To this letter the plaintiff replied as follows:

"Spring Valley, Minn., March 13, 1884.

"*R. R. Dorr, Esq., Sec'y Bankers' Association, St. Paul* — Sir: I have examined the printed matter you have mailed

me, and relying upon your letter of·the 18th ult. I have concluded to try some insurance in your company, viz., $6,000. I understand my payments to be as follows: Cash payment, $68.34. Six months note, $51. Twelve months . note, $51. All of which I herewith inclose. After deducting the $68.34 from the inclosed $72 check, please .credit me with the balance, $3.66, to be applied upon first future casual assessment. If all right please send my policy by next mail and let me know at same time when the periodic assessment of $15.30 comes due in each year. Am liable to be neglectful, and I rely upon the company not trying any short snaps or technical trips on me without full due actual notice, at least according to your letter. Yours truly,

"J. N. TRUE."

To this letter the secretary, Dorr, replied as follows:

"ST. PAUL, MINN., March 19, 1884.

"*J. N. True, Esq., Spring Valley, Minn.*— DEAR SIR: Referring to your esteemed favor of the 13th inst., would say that we have passed to your credit in the 'suspense' account the $3.66 balance carried by your remittance. The periodic assessment comes due between the first and fourth Monday in September, annually. Next September you will be assessed for a year's dues, less a credit for the .expired portion of the fiscal year from September, 1888, the date of your joining, counting every month. We will try to keep you clear of any 'short snaps,' and trust we shall succeed. Yours truly,                     R. R. DORR, Sec'y."

Soon after these letters were passed between the parties, the certificates of insurance were issued to the plaintiff, and he paid all assessments thereon made after March 13, 1884, down to September 1, 1887. The plaintiff contends that, in pursuance of this correspondence and relying upon the same, he accepted and paid for the insurance made by said corporation, and that he was entitled to the notice of thirty days as stated in the first letter of Secretary Dorr, as well

as thirty days after the expiration of such notice, within which to pay his assessments before any forfeiture of his policies could be enforced against him, and if this contention can be sustained then there was no forfeiture of his insurance for not paying the assessment of September, 1887, as the evidence shows that no notice of such assessment was sent to him until September 14, 1887, and that he remitted the said $15.30 by his agent, Wetherby, to the company on the 13th of October, and it was received by the company on the 14th of October, 1887; or if it should be insisted that notice of this assessment was sent to the plaintiff on September 1, 1887, by letter written by the secretary of the company to the plaintiff, still under the terms of the letter written by the secretary before the policies were issued, and to induce the plaintiff to take such insurance, the payment made on the 14th of October, 1887, would be in ample time to prevent any forfeiture. It is more than probable that the letter of the company dated September 1, 1887, never came to the possession of the plaintiff, at any rate not until some time after its date.

There is another letter written by the secretary of the company to the plaintiff, and dated October 4, 1887, which shows quite conclusively that there was no claim that the policies had been forfeited by reason of the nonpayment of said assessment of September, 1887, previous to the 26th of September. This letter appears to have been written on the 4th of October, 1887, and addressed to the plaintiff at West Superior. It reads as follows:

"St. Paul, Minn., Oct. 4, 1887.

"*J. N. True, West Superior, Wis.:* We are in receipt of your favor appointing Geo. Wetherby, of Duluth, trustee under your insurance, and the same will be so entered on our records. I notice, however, that you have not paid your annual dues, amounting to $15.30, notice of which was sent you showing that this amount was due Sept. 26. Kindly

send us your local check by return mail, so that your insurance may be put in force.     Yours truly,

"DOUGLAS PUTNAM, Secretary."

This letter was not answered by the plaintiff, probably for the reason that he was then either in Dakota or on the north shore of Lake Superior; but on the 12th of October, George Wetherby, as agent for the plaintiff, sent the company a letter containing a draft for the $15.30.     The letter reads as follows:

"WEST SUPERIOR, WIS., October 12, 1887.

"*Bankers' Life Association, St. Paul, Minnesota.*— Gentlemen: At the request of *J. N. True,* a member of your association, I herewith enclose a draft for $15.30, as annual dues on his policy.     Please acknowledge receipt of same and oblige yours respectfully,     GEORGE WETHERBY."

George Wetherby was a witness on the trial, and testified that on the 5th of July, 1887, when plaintiff was about to depart to the Ft. William country, he left with him $25 or $30 with which to pay any assessment, especially the assessment which plaintiff knew would fall due in September, 1887, and that he sent the letter and draft to the company to pay such assessment.     To the letter of Mr. Wetherby the president of the company wrote as follows:

"ST. PAUL, MINN., Oct. 14, 1887.

"*George Wetherby, Esq., West Superior, Wis.:* Yours of the 12th at hand, inclosing $15.30 in payment of annual dues on insurance of *J. N. True.*     The time for the payment of annual dues having expired, we are obliged to hold this money subject to your order, pending a receipt of inclosed health certificate, to be signed by *Mr. True.*     Please have the same executed, and on its return we will receipt to him, provided everything is satisfactory.   R. R. DORR, President."

In addition to the foregoing, there was a long correspondence between the plaintiff and the president of the company in regard to this matter, which we consider quite

immaterial to the proper decision of the case. In our view of the case, if the offer of payment on the 13th of October, 1887, was in time to prevent a forfeiture, nothing that happened after that could work such forfeiture, for if the company had no right to declare a forfeiture, it had no right to demand a certificate of health of the plaintiff as a condition of recognizing him as a member of the company.

The contention of the learned counsel for the respondent is that the statements made by the secretary of the company before the issuance of the policies as to what notice should be given to the plaintiff before his policies could or would be forfeited cannot be considered in determining the question as to the fact of forfeiture, and that whether there was a forfeiture or not must be determined by the articles of association and the other evidence in the case. We would be inclined to hold that under the articles, and in consideration of the letter of the company written on the 4th of October, the company should be estopped from setting up a forfeiture on the 26th of September, 1887. The letter of the 4th having, in effect, informed the plaintiff that he would continue a member of the company if he sent the $15.30, and the plaintiff, by his agent, having complied with its request within a reasonable time, it would be inequitable and unjust to insist upon a technical forfeiture. The same rule should be applied to this case that this and other courts have applied to fire insurance companies, viz., that if the company requests the insured to incur expense in making proofs of loss or for other purposes, and he incurs such expense, the company cannot thereafter insist upon a forfeiture of the policy for a cause which was well known to the company when such requirement of proofs of loss or other thing was requested by the company. *Jerdee v. Cottage Grove F. Ins. Co.* 75 Wis. 345, and cases cited on page 353; *Renier v. Dwelling House Ins. Co.* 74 Wis. 96. So in this case the company, having requested the payment of the as-

sessment, and assuring the insured party that if it was paid he would remain a member of the company, cannot thereafter be allowed to consider the policies forfeited, and demand a certificate of health in order to be reinstated to his rights under his policies.

We are also of the opinion that the agreement in effect made between the plaintiff and the company at the time the policies were issued, is not so inconsistent with the rules and regulations of the company as not to bind the company. The rules of the company and the uniform practice of the company was to give all parties notice of an assessment and the amount thereof before any forfeiture of a policy, and the special agreement as to the notice required to be given in this particular case should, we think, be binding on the company, in any event, until the insured had been expressly notified that he must not any longer rely upon such agreement as to the notice to be given, as the evidence in this case shows quite clearly that the plaintiff had no knowledge in fact as to what the articles of association contained on the subject of notice and forfeiture.

We think the evidence of forfeiture in this case, under all the proofs, is not so strong as in the case of *Alexander v. Continental Ins. Co.* 67 Wis. 422, 428, in which this court expressly held that when the company, by its agent, had induced the insured to believe that no forfeiture for nonpayment of the money to become due on her premium note would be incurred until a personal notice to make payment had been given to her by such agent, the forfeiture was waived, notwithstanding by the terms of the policy it was to become forfeited if the insured failed to make payment of her premium note when it became due, and by the terms of such note it became due at fixed periods. The cases cited to sustain the opinion in that case will be found on page 428. The case of *Dilleber v. Knickerbocker L. Ins. Co.* 76 N. Y. 567, there cited, is peculiarly applicable to the case

at bar. Under the contract made for the insurance in the case at bar between the assured and the secretary of the company, the assured had the right to believe that his policies would not be forfeited until the notice agreed to be given had in fact been given, and he could rely upon this contract, at least until he had been expressly informed that thereafter he must make his payments in accordance with the requirements of some other notice, or of no notice at all. And it is not shown that any such information was given to the plaintiff until after he made his payment on the 13th of October, 1887. It should be remarked that in the case at bar the agreement relied upon by the plaintiff is in writing and must be considered as a part of the agreement for insurance, and it must also be understood that there is nothing in the certificates themselves issued to the plaintiff that is in conflict with the agreement made with the secretary. The articles referred to in said certificates were not attached to them, nor were their contents even made known to the plaintiff until after the forfeiture was declared by the defendant.

It may be urged that the company in this case have intended to deal fairly with the plaintiff, and did not exact anything of him to continue his insurance except the payment of his regular dues and the production of a certificate of good health. Under the facts in this case, it may be that the requirement of a certificate of good health could easily have been furnished by the plaintiff, and that the forfeiture is insisted upon by the company because of the obstinate refusal of the plaintiff to furnish such certificate. The case cannot depend upon the fact that the plaintiff was not prejudiced in this case by the requirement of the health certificate. It is probable that he could have procured such certificate. But the right of the company to declare his policies forfeited does not depend on the fact that the plaintiff could have obtained such certificate and refused to

do so, but upon the fact whether he had made such default in payment of the assessment of September, 1887, as justified the defendant in declaring the forfeiture. If the company was justified in declaring the forfeiture, then it could insist upon it without regard to the condition of the health of the insured, and could, under its articles and rules, refuse to reinstate the plaintiff, although his health at the time might have been such as would have made it impossible to procure the necessary certificate of good health.

Forfeitures, whether in insurance policies or other contracts, are not favored in the law, and will only be enforced when the facts establishing such forfeiture are clearly established by the proofs. In this case we think there is a want of sufficient proofs to establish the forfeiture. The company having unlawfully refused to continue their contract with the plaintiff, it has no right to retain the moneys paid by him on such contract.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to that court to enter judgment in favor of the plaintiff, against the defendant, for the sum of $326.91.