MAZURKIEWICZ *v.* ST. ADELBERTUS AID SOCIETY.

BENEFIT SOCIETIES—BY-LAWS—VALIDITY—EXPULSION OF MEMBER.
Under section 4 of the act providing for the incorporation of
benevolent societies (3 Comp. Laws, § 8258 *et seq.*), empow-
ering such societies to make and establish rules and regula-
tions for governing the affairs and business of the corporation
and its members, not contrary to the laws of the United
States or this State, and to decide as to the necessary qualifi-
cations for membership, a by-law of such a society prohibiting
members from belonging to any society not approved by the
Roman Catholic Church is valid, and a violation thereof by
the member justifies his expulsion.

*Certiorari* to Kent; Perkins, J.    Submitted February
12, 1901.    Decided June 17, 1901.

*Mandamus* by Franciszck Mazurkiewicz to compel the
St. Adelbertus Aid Society of Grand Rapids to reinstate
relator as a member of such society.    From an order
granting the writ, respondent brings *certiorari*.    Re-
versed.

*Dunham & Malcolm,* for relator:

The by-law in question is void as unreasonable, and not
necessary to effect the object for which the society was in-
corporated.    *Roehler* v. *Aid Society,* 22 Mich. 86; *Pul-
ford* v. *Detroit Fire Department,* 31 Mich. 458; *Stewart*
v. *Father Matthew Society,* 41 Mich. 67 (1 N. W. 931);
*Allnutt* v. *High Court of Foresters,* 62 Mich. 110 (28
N. W. 802); *Erd* v. *Relief Ass'n,* 67 Mich. 233 (34 N.
W. 555); Niblack, Ben. Soc. (2d Ed.) § 23; 3 Am. & Eng.
Enc. Law (2d Ed.), 1062; *People* v. *Benevolent Society,*
24 How. Prac. 216; *Cartan* v. *Benevolent Society,* 3
Daly, 20; *Com.* v. *Benevolent Society,* 2 Bin. 441 (4
Am. Dec. 453); *Leech* v. *Harris,* 2 Brewst. 571; *Peo-
ple* v. *Medical Society,* 24 Barb. 571; *State* v. *Mer-*

*chants' Exchange*, 2 Mo. App. 96; *State* v. *Chamber of Commerce*, 20 Wis. 68; *State* v. *Williams*, 75 N. C. 134.

*McKnight & McAllister*, for respondent.

LONG, J. This was an application for a *mandamus*, made to the court below to compel the respondent society to reinstate relator as a member of that society, from which it is claimed he has been unlawfully expelled. There are only two questions involved:

1. Is subdivision *c*, § 5, of article 12, which reads as follows: "No member of the St. Adelbertus Aid Society of Grand Rapids, Michigan, can be a member of any society that is not approved by the Roman Catholic Church,"—a valid, legal, and binding by-law of said respondent society?

2. Was relator legally expelled from the respondent society?

It appears that in November, 1872, there was an unincorporated society organized in the city of Grand Rapids under the name of the Polish Roman Catholic Mutual Society under the Guardianship of St. Albert. This unincorporated society adopted certain by-laws for the conduct of its business, and which society was organized as an adjunct of St. Albert's Church of said city, and which church organization was composed entirely of Poles of the Roman Catholic faith. The society existed until 1892, when several of its members desired to incorporate it, and did so in the month of November of that year, under the corporate name of St. Adelbertus Aid Society of the City of Grand Rapids, Michigan. This incorporation was under Act No. 155 of the Public Acts of this State for the year 1879. It was provided in said articles of incorporation as follows:

"The purposes and objects for which said corporation is formed shall be to provide for the relief of distressed members, the visitation of the sick, the burial of the dead, and such other benevolent and worthy purposes and objects as affect the members of the corporation."

Immediately upon the incorporation of the Polish Roman Catholic Mutual Society under the name of the respondent society, it adopted as its by-laws the same by-laws that had governed it in its unincorporated condition, and one of which by-laws is the one above stated.

On October 2, 1894, relator became a member of the respondent society. In the year 1895 he became a member of the Polish-American Industrial Society. On July 17, 1899, respondent undertook to remove relator from its society, and claims that it did so, for the reason assigned by respondent that the Polish-American Industrial Society was not approved by the Roman Catholic Church, and that this was a violation of said by-law. Relator was removed from the respondent society for no other cause, always having paid his dues promptly, and in all respects had conducted himself in conformity to the by-laws of said society. At the time relator was removed, all other members of the respondent society were likewise dismissed and removed from said society who were members of the said Polish-American Industrial Society, excepting all those persons who had formerly belonged to the Polish Roman Catholic Mutual Society under the Guardianship of St. Albert. At the time relator was removed from the respondent society, there were many members of it who were also members of the Polish-American Industrial Society, but which members had formerly belonged to the aforesaid unincorporated society. All such members were permitted to remain, and enjoy all rights, benefits, and privileges of the respondent society, for the sole reason that they had formerly belonged to said unincorporated society. At the time relator became a member of the respondent society, it was possessed of real estate of the value of at least $20,000, and at the time of his removal from said society its real estate was worth much more than that. It owned a large and valuable club house located upon its grounds in the city of Grand Rapids, where its business and social meetings were held.

At the time relator joined the respondent society, its

by-laws provided for an entrance fee of from $4 to $10, depending upon the applicant's age (section 7, by-law 11); that a yearly tax of $3, payable monthly, as dues, must be paid by each member (section 1, by-law 12). Section 3 of this by-law also provides:

"It is the duty of every member to confess and receive holy communion twice a year in the St. Albert's Church, together with the society, on St. Albert's day, as a patron of our church and society, and again near the 2d of November, on Sunday, as a yearly remembrance of the organizing of the society."

Section 6 of the same by-law provides:

" For the reason that this is a Catholic society, it should, therefore, be under the guidance of the local pastor."

By-law 14 provides that:

"In case of death of any member or member's wife, in either case the society is to pay $50 for funeral expenses; and the amount of assistance to sick members shall be $3 per week."

By-law 12, § 8, provides:

"Every member of this society shall send his children to the Polish school; and, if a member of this society fails to live up to the laws of this society, and practices other immoralities concerning the Catholic Church, and the society still considers him a member, in that case the local pastor reports to the society, and it is the duty of the society to dismiss such member."

The Polish-American Industrial Society, to which relator also belonged, provided a weekly indemnity of $3 in case of sickness, and a payment of $50 for the funeral expenses of a member or his wife.

The membership of the respondent society were Poles of the Roman Catholic faith. Father Pongannus, pastor of the St. Albert's Catholic Church of Grand Rapids, was a member of the respondent society from the fact of his being the local pastor of said church. During the whole time relator was a member of the industrial society, respondent was cognizant of the fact, solicited and accepted

his dues, covering a period from July, 1895, to October, 1899. There are many members now of the respondent society who are also members in good standing of the condemned society for the simple and only reason that they were members of the Polish Roman Catholic Mutual Society prior to 1892.

On the evening of July 17, 1899, at a meeting of the members of the said respondent society in its hall in that city, the said Father Pongannus came into said meeting, and took the president's seat, and demanded that all persons present who were members of the Polish-American Industrial Society should leave the society. There were no written or other charges preferred against relator except the said statement of Father. Pongannus. Relator asked that he might be heard in his defense, immediately whereupon the said meeting was dismissed, and relator and other members of the condemned society, save the excepted members before mentioned, were required to leave the hall; and, after they had gone out, and the doors had been closed, a resolution was passed by the remaining members of respondent society requiring that relator and the others who were expelled from the hall renounce their membership in the Polish-American Industrial Society within three months, or stand dismissed and expelled from the respondent society. Relator was afterwards notified of this resolution by personal friends of his, who remained in said hall while said resolution was passed; but he continued to pay his dues for three months thereafter, when the respondent society refused to accept any further dues, and refused to permit relator to enter said hall, or to enjoy any of the benefits of said society, and since which time he has been excluded from participating in either the business or social gatherings of said society upon its premises. On January 2, 1900, without any notice to relator, the respondent society passed another resolution, giving relator and the other expelled members one month's time in which to drop out of the Polish-American Industrial Society and return to the respondent

society. Relator refused to give up his protection and the protection to his family in the Polish-American Industrial Society, and he is now, and has been since July 17, 1899, excluded from all the benefits and privileges of being a member of said respondent society.

The case was heard in the court below, testimony taken, and the whole case considered there. The case comes into this court by writ of *certiorari.*

The return made by the court below fully sets out the facts found. The court found that the Polish-American Industrial Society was not at any time under the ban of the Roman Catholic Church prior to the hearing of the case, in May, 1900, and that the ban appears to consist wholly of the disapproval of Father Pongannus. The court also found that the respondent society is the owner of real estate of the value of $20,000, and that the order of dismissal, if valid, not only dismissed relator from said society after paying his dues thereto for 6 years, but also dismissed others who had been paying dues thereto for more than 18 years, and for no other reason than that they had provided for themselves additional weekly indemnity of $3 per week in case of sickness by becoming members of the Polish-American Industrial Society.

The act under which the respondent society is organized (being Act No. 155, Pub. Acts 1879; 3 Comp. Laws, § 8258 *et seq.*) provides that:

"Any ten or more persons, residents of this State, desiring to become incorporated for benevolent purposes, may make and execute, under their hands and seals, articles of association, which said articles of association shall be acknowledged before some officer of this State," etc.

Subdivision 3 of section 1 provides:

"The purposes and objects for which said corporation is formed * * * shall be to provide for the relief of distressed members, the visitation of the sick, the burial of the dead, and such other benevolent and worthy purposes and objects as affect the members of the corporation," etc.

Pursuant to the provisions of the act, articles of

association were filed, setting forth the purposes of the organization in the language of subdivision 3 of section 1 of the act.   By-laws were adopted, and subdivision *c*, § 5, of article 12, as above set forth, became a part of the by-laws.   The court below found this by-law unreasonable and void, for the reason that it was not incidental to or necessary for the carrying out of the purposes of the organization, and that the relator was unlawfully deprived of his rights in the association.

The conclusions of the court below cannot be sustained. The act under which the respondent society was organized provides by section 4 that:

"Said corporation shall have full power and authority to make and establish rules and regulations for the regulating and governing of the affairs and business of said corporation, and members thereof, not contrary to the laws of the United States or this State, to decide as to the necessary qualifications for and who shall be eligible to membership therein, to provide for the election of members, and to designate, elect, or appoint, in such manner as they see fit by their rules and regulations, such officers, under such names and style, as they shall decide, who shall exercise such powers, and such supervision, control, and management of the affairs of such corporations, as shall be delegated to them respectively by the constitution, rules, regulations, and by-laws of said corporations."   3 Comp. Laws, § 8261.

Under the power thus conferred, the respondent society passed the by-law in controversy.   Such by-law is not in conflict with any law of the United States or of this State. It is, therefore, binding upon the members of the society.

A very similar question was presented in the case of *Bretzlaff* v. *Benefit Society*, 125 Mich. 39 (83 N. W. 1000).   Article 3 of the constitution of that society provided:

"Only such persons can be members of the society that adhere and belong to the Evangelical Lutheran Church, their congregation belonging to the Synodical Conference. They must lead a moral and virtuous life, and must not belong to any secret society or any other sick-benefit

society.  Members that leave the above-named church thereby lose their membership in the society."

It was held that Mr. Bretzlaff was bound by this provision in the articles of the society, and that it was not unreasonable or against public policy; citing 3 Am. & Eng. Enc. Law ( 2d Ed.), 1079.

We think the present case falls directly within the rule there laid down.  A person who joins such a society is bound by the charter and by-laws, which are a part of his contract.  *Douville* v. *Insurance Co.*, 113 Mich. 158 ( 71 N. W. 517); *Van Poucke* v. *St. Vincent de Paul Society*, 63 Mich. 378 ( 29 N. W. 863 ).

The order of the court below must be reversed, with costs in favor of respondent.

The other Justices concurred.