BARRY, Appellant, vs. THE ORDER OF THE CATHOLIC KNIGHTS OF WISCONSIN, Respondent.

*October 1—October 20, 1903.*

*Benefit societies: Conditions of membership: Termination of liability if member ceases to be a Catholic: Public policy: Constitutional law.*

1. By the articles of incorporation and the constitution of a benefit society organized for the sole benefit of members of the Roman Catholic Church, none but practical Catholics could be admitted, and members must remain practical Catholics and communicants of the church in order to participate in the benefits. In an application for membership (which became part of the insurance contract) the applicant agreed that upon any failure to conform strictly to the constitution he should forfeit all right to membership and benefits, and the certificate issued to him further provided that the death benefit should only be payable in case he should so conform.  Afterwards the member was married by a Protestant minister and *ipso facto* was excommunicated and ceased to be a Catholic.  *Held*, that all liability on the benefit certificate thereby ceased, the provisions of the contract being self-executing.

2. Membership in the society being purely voluntary, the provisions above mentioned, in its laws and contracts, were not contrary to public policy, and did not interfere with any rights of conscience or impose any religious test, within the meaning of secs. 18, 19, art. I, Const.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge.  *Affirmed.*

This is an action by the plaintiff, as widow of one James H. Barry, deceased, upon a mutual benefit certificate issued by the defendant to said James H. Barry in his lifetime.

The action was tried by the court, and the facts necessary to be stated are undisputed. The defendant is a mutual benefit association incorporated under the laws of Wisconsin for the benefit of practical Roman Catholics only, and providing the death benefit of $2,000. Its articles of incorporation provide, among other things, that: ·

"A member who shall cease to be a practical Catholic, or a communicant of said church, or who shall neglect to receive holy communion at least once a year, or who shall join any organization condemned by the church, or any society using the oath of secrecy, or who shall fail or neglect to pay any assessment or dues within the time therefor prescribed, shall be discharged and expelled from membership of this order, and deprived of all benefits thereof."

The constitution of the order provides, among other things, as follows:

"Sec. 2. No person shall be admitted to membership in this·branch unless he is a practical Catholic, and a communicant of said church, nor unless he furnish a certificate from his pastor, or the spiritual director of the branch, that he is a practical Catholic. . . . He must receive holy communion at least once a year, at Easter or thereabouts, and he shall furnish and file with the branch a certificate from his pastor or furnish other satisfactory evidence within sixty days after Easter Sunday, certifying or showing that he performed his Easter duty, under penalty of forfeiture of all benefits. . . .

"Sec. 40. Any member in good standing shall be permitted to remove from this state to spend any or the whole part of his life elsewhere without losing his benefits, provided he keeps his assessments and his share of the expenses of the branch to which he may belong and the expenses of the order paid up as they may become due. He must also, in every respect, comply with the constitution, laws, rules and regulations of the order and furnish to the branch of which he is a member a certificate once a year from the pastor of the parish

in which he resides, that he is a communicant of said church, and that he has received holy communion at least once during the year."

Upon the 24th day of October, 1885, James H. Barry, being then a single man, residing in Madison, made written application for membership in the Madison branch of the defendant corporation, in which application he stated as follows:

"Having read the constitution and laws of your order, the subordinate constitution and by-laws, and being fully acquainted with the objects of your order and fully endorsing them, I desire to become a member of your branch, and of your order, and if elected eligible to membership and admitted upon examination, I do promise to faithfully carry out the principles as set forth in the constitution of your order, your subordinate constitution and by-laws; and upon any failure on my part to strictly conform to the said constitution and subordinate constitution and by-laws, that now, or may hereafter govern your order, as well as your branch, I do hereby agree to forfeit all rights to membership and benefits."

Upon this application a benefit certificate was issued to him December 3, 1885, in which his father and sisters were named as beneficiaries. September 23, 1890, Barry was married to the plaintiff at Batavia, Illinois, by a Protestant minister; the plaintiff having been previously married to one Moulton, whom she left in 1884, there being no evidence as to his death or whether a divorce had been obtained. On December 19, 1891, Barry surrendered the first certificate issued, and a new certificate was issued to him, in which the plaintiff was named as the sole beneficiary; the defendant's officers not knowing at the time the fact that Barry had been married by a Protestant minister. This certificate recites that it is issued in consideration of the statements and representations made in the original application, which is made a part of the certificate, and upon the express condition that

Barry should well and truly perform all of the requirements of the constitution, laws, and regulations of the order then in force or thereafter adopted; and provided that, if he did do so, and in that case only, the order would pay to the beneficiaries the death benefit.

From 1893 up to his death Barry lived outside of the state. June 4, 1893, the Madison branch voted to expel him from the order because of his marriage by a Protestant minister, by which fact he ceased to be a practical Catholic. This action was claimed by the appellant to be void for lack of proper notice and other reasons. Barry died October 11, 1898. Proofs of his death in the ordinary form of life insurance proofs were tendered to the defendant's officers in due time, and refused. Said proofs contained no statements. showing that Barry had performed his church duties as required by the constitution and articles of incorporation, nor that he was at the time of his death a practical Catholic. There was undisputed proof that by the laws of the Roman Catholic Church a member thereof who is married by a Protestant. minister is thereby excommunicated, and the trial court found that Barry at the time of his death had ceased to be a practical Catholic, and for that reason the plaintiff was not entitled to recover, and the complaint was dismissed, and the plaintiff appeals.

For the appellant the cause was submitted on the brief of *Pliny B. Smith* and *R. B. Mallory.*

For the respondent there was a brief by *Wigman, Martin & Martin,* and oral argument by *P. H. Martin.*

WINSLOW, J. There were a number of interesting questions discussed in the briefs in this case, which we have not found it necessary to consider. To our minds, a few simple propositions demonstrate the correctness of the judgment. The defendant corporation was organized for the sole benefit of members of the Roman Catholic Church, and for them

only so long as they remain practical Catholics. The decedent, in his application for membership, understood this, and agreed that, if admitted, he would faithfully carry out the principles set forth in the constitution and by-laws of the order, and that upon any failure so to do he should forfeit all right to membership and benefits. This agreement became part of the contract of insurance by the terms of the certificate in suit, and the certificate further provided that the death benefit should only be payable in case the insured should well and truly perform all the requirements on his part prescribed by the constitution, by-laws, and regulations of the order during his lifetime. Thus the liability was doubly guarded: first, by an agreement to forfeit the benefit in case of noncompliance with the laws of the order; and, second, by a clause making liability dependent upon compliance. These contract provisions are self-executing. The laws of the order provide, in terms too plain to be misunderstood, that none but practical Catholics shall be admitted to the order, and that members must remain practical Catholics and communicants of the church in order to participate in the benefits. The evidence shows that the decedent was *ipso facto* excommunicated and ceased to be a Catholic, practical or otherwise, upon being married by a Protestant minister. Thus, by virtue of the provisions of the contract sued on, all liability ceased, and expulsion was not necessary.

An argument is made that these provisions are contrary to the policy of the law, in that they impose a religious test, and secs. 18, 19, art. I of the constitution are cited. The objection seems puerile. By these provisions no man's conscience is coerced, nor his freedom of worship curtailed. Membership is purely voluntary. If a man chooses to join an organization having such requirements, and agrees that he shall forfeit his right to benefits on failure to live up to them, he is at liberty to do so. All men may make contracts as they choose, so long as they be not contrary to law or public policy.

The point has been expressly decided in other courts in accordance with these views. *Franta v. Bohemian R. C. C. U.* 164 Mo. 304, 63 S. W. 1100, 54 L. R. A. 723; *Mazurkiewicz v. St. Adelbertus A. Soc.* 127 Mich. 145, 86 N. W. 543, 54 L. R. A. 727.

*By the Court.*—Judgment affirmed.