ELECTA R. GRAVES, Respondent, *v.* THE KNIGHTS OF THE MACCABEES OF THE WORLD, Appellant.

Insurance (life) — validity of by-law of mutual benefit life insurance association prohibiting member from engaging in manufacture or sale of any intoxicating liquor as a beverage.

A by-law of defendant provided that "No person shall be eligible for membership in the Order who is engaged either as principal, agent or servant in the manufacture or sale of spirituous, malt or vinous liquors as a beverage, and should any beneficial member of the Order engage in any of the above-named prohibited occupations after his admission, his benefit certificate shall become null and void from and after the date of his so engaging in such prohibited occupation."

The insured, after his admission, formed a partnership with his son for the purpose of carrying on a saloon business. He personally applied for and took out a license in the firm name, and the saloon was owned and operated for several months by said copartnership, there being nothing to indicate that the ordinary rules of ownership and legal control of the copartnership property and business, and of sharing in profits and losses, did not prevail. He did not, as a matter of fact, take any part in the actual management of the business or in the sale of liquors. *Held,* that the acts of the insured were a violation of the terms of the by-law and worked a forfeiture of the certificates issued by defendant on the life of plaintiff's decedent.

*Graves* v. *Knights of Maccabees,* 128 App. Div. 660, reversed.

(Argued October 4, 1910; decided October 28, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 18, 1908, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George P. Keating* for appellant. The by-laws relating to the forfeiture of certificates by engagement in the sale of liquors as a prohibited occupation are reasonable and valid. (*Tucker* v. *Supreme Tent,* 123 App. Div. 223; 128 App. Div. 918; *People ex rel. Goett* v. *Grand Lodge,* 32 Misc. Rep. 528; Bacon on Ben. Soc. §§ 100, 324; *Langnecker* v. *Grand Lodge,* 111 Wis. 279; *Lefler* v. *Modern Woodmen,* 100 Wis. 79; *Atty.-Gen.* v. *Ins. Co.,* 82 N. Y. 172; *Roland* v. *Ins. Co.,* 132 N. Y. 378; *Pauley* v. *Modern Woodmen,* 87 S. W. Rep. 990; *Moeschbacher* v. *Supreme Court,* 188 Ill. 9; *Ellerbe* v. *Faust,* 119 Mo. 653; *Dwight* v. *G. L. Ins. Co.,* 103 N. Y. 343.) There can be no claim in this case with reference to the engagement in a prohibited occupation having been waived, for the reason that such claim has not been pleaded or proved. (*Garlock* v. *Ins. Co.,* 109 App. Div. 175.)

*Frank C. Sargent* and *Frank B. Lennox* for respondent. The finding of the jury, that the insured did not engage in

any of the prohibited occupations, within the meaning of the terms of the by-law in these policies, was established by the undisputed evidence. (*People* v. *Gregg*, 59 Hun, 107; *Janneck* v. *M. L. Ins. Co.*, 162 N. Y. 574; *Kratzenstein* v. *W. A. Co.*, 116 N. Y. 59; *Allen* v. *St. L. Ins. Co.*, 85 N. Y. 473; *Herrman* v. *M. Ins. Co.*, 81 N. Y. 184; *Dilleber* v. *H. L. Ins. Co.*, 69 N. Y. 263; *East Hampton* v. *Vail*, 151 N. Y. 463; *Kenyon* v. *M. M. A. Society*, 122 N. Y. 254.)

HISCOCK, J.    This action was brought to recover on two certificates of insurance issued by the appellant on the life of one Graves and payable to the respondent, his wife. The sole defense is that all rights under these certificates had become forfeited because after their issue Graves became engaged in the sale of liquors in violation of one of appellant's by-laws. On the facts established in support of that defense hereafter recited, the trial court refused to hold as matter of law that there had been a violation but allowed the jury to say whether there had been, and the latter having answered this question in the negative, the Appellate Division by a divided court have approved the course taken by the trial court and affirmed the judgment against the appellant.

We shall assume for the moment, reserving for subsequent consideration a single minor question, that the certificates on which suit is brought are subject to a regulation adopted by the appellant in 1895 and subsequently from time to time amplified and which provided as follows:

"Sec. 142. No person shall be admitted as a beneficial member of this order who is *engaged* in any of the following *occupations:* Blasting, coal mining, submarine operations, manufacturing highly inflammable or explosive materials nor who is an aeronaut or lineman in the employ of electric companies, either in the construction or repairing of lines over which the electric current passes, or who is engaged in any other occupation deemed extra hazardous by the Supreme Medical Examiner, *and no person shall be eligible for membership in the Order who is engaged either as principal, agent*

*or servant in the manufacture or sale of spirituous, malt or vinous liquors as a beverage, and should any beneficial member of the Order engage in any of the above named prohibited occupations after his admission, his benefit certificate shall become null and void* from and after the date of his so engaging in such prohibited occupation, and he shall stand suspended from all rights to participate in the benefit funds of the Order, * * * and the Record Keeper, when any such suspension takes place, shall not receive further assessments from such suspended member."

The acts proved by the appellant as constituting a violation and working a forfeiture of the certificates were the following: Graves, the insured, formed a partnership with his son for the purpose of carrying on a saloon business. He personally applied for and took out a license in the firm name, and the saloon was owned and operated for several months by said copartnership, there being nothing to indicate that the ordinary rules of ownership and legal control of the copartnership property and business, and of sharing in profits and losses, did not prevail. It was testified to, however, that while Graves lived in the same house in which the saloon was conducted, he did not, as a matter of fact, take any part in the actual management of the business or in the sale of liquors.

Under these circumstances the courts below have permitted a recovery on the theory that the language of appellant's by-laws only prohibited an active or perhaps physical participation in, or relation to, the sale of liquors, and did not include a passive proprietary interest in the business.

No case has been cited which is controlling of the question now presented, and its decision, therefore, must be governed by the ordinary rules of construction. Applying these, we are of the opinion that, although the issue may seem somewhat close, the construction of the by-law thus far permitted is too narrow, and that it should have been held as matter of law that the acts of the insured were a violation of its terms and worked a forfeiture of the certificates.

It is beyond controversy that the appellant had a perfect

right in a proper manner to adopt a by-law applicable to certificates thereafter issued which, as broadly as might be thought wise, would prohibit beneficial members from becoming engaged even indirectly in the business of manufacturing or selling liquors. In determining what it did do, we of course are mindful of the cardinal rules that when permissible a construction should be employed which will avoid forfeitures and that the penalties for ambiguous words should be visited on him who has selected them. But necessarily before these rules can be of assistance to a party in such a case as this it must appear that the application to words of that fair and ordinary meaning which must be presumed to have been in the minds of the parties fails to make the intent clear and does in fact leave some uncertainty concerning whose solution intelligent men might reasonably differ and argue. We do not think that such uncertainty fairly arises from the clauses now before us for interpretation. The appellant evidently determined that there were risks incident to the liquor business which it did not care to incur under its certificates. It may have regarded them as moral or physical. While the latter especially would seem to be the greater in the case of one actually handling and passing out liquors, no one can say that they were absent in the case of one who was the owner and in legal control and possession of them and who had the opportunity, although he did not customarily choose to exercise it, to come in contact with them. Therefore, in the first place, as it seems to us, there is no authority for assuming that the actual intent of the appellant must have been to direct its prohibition simply against those who happened for the time being to be in active physical contact with the manufacture or sale of liquors, and, in the second place, the language used does not seem to us to express such intent. Without stopping to analyze too much at length the various definitions adopted by the lexicographers, the word "engaged" used by the by-law may be regarded as the equivalent of the words "carry on," and the word "occupation" as

26

meaning "business," so that we shall have a prohibition against carrying on the business of manufacturing or selling liquors. And when we have the clause thus formulated, it seems to us that any layman reasonably versed in the use and meaning of our language would undoubtedly conclude that a man was so carrying on such business when it appeared that he was one of two partners who owned and operated it under licenses taken out by him personally, that presumably he furnished his share of the capital and was entitled to his share of the property and profits and to an equal voice in the control and conduct of the business, and that such conclusion would not be stayed simply because the assumed individual dwelling at the place of business elected for a longer or shorter period, and for one reason or another not to take that active part in the ordinary routine of business which both opportunity and legal right placed within his power.

We cannot help believing that, if we should limit the meaning of the by-law by magnifying the conclusiveness of the test of physical or active participation as desired by respondent, we should lay the foundation for many and perplexing refinements which eventually would lead far beyond what was or reasonably should have been anticipated when the by-law was framed.

To our mind the intent to give the by-law a broader meaning than the one thus urged, and to cover different phases of interest or participation including the present one is emphasized by specifically making the prohibition apply to any one who is "engaged either as principal, agent or servant." A "servant" or "agent" would not be apt to have any proprietary interest, and, therefore, his connection would be established by the physical performance of various acts in the conduct of the business. Conversely, the word "principal" with its associations naturally suggests one whose relation is that of proprietor, and who, as commonly in the case of a principal, might elect to intrust the active conduct of the business to the agents and servants already referred to.

The argument of *ex sociis noscitur* is somewhat relied on

to sustain the view thus far adopted by the courts. Our attention is called to the fact that in the prior clause of the by-law which contains the provision with reference to the manufacture and sale of liquor the words "engage" and "occupation" are used with reference to certain pursuits just as in the case of the manfacture of or traffic in liquor, and inasmuch as the only objection to these other pursuits could be the risk of personal injury to one physically carrying them on, said words "engage" and "occupation" must mean a physical and active participation ; that if said words have this meaning in one clause of the section they must have the same meaning in another clause, and, therefore, in connection with the manufacture and sale of liquors must mean active participation. We do not think that there is much force in this argument in this case. It is doubtless true that the increased risks incident to blasting, mining and the manufacture and sale of explosives would be applicable only to those who were physically engaged in conducting such operations, and when we take into account the classification of these occupations as extra hazardous and examine the words used in this prohibition they might in most instances be fairly limited to the interpretation suggested by the respondent. For instance, we can hardly conceive of the prohibition against engaging in the occupation of blasting as being reasonably applicable to any one else than him who was actually engaged in carrying on the occupation, and we observe that the ambiguity which might be attached to the words "coal mining," originally used in this prohibition, was removed in a subsequent law by substituting the words "coal miner" which were evidently intended to mean an actual worker in the mines. And even in this clause, in construing the prohibition against engaging in the occupation of "manufacturing highly inflammable or explosive material," we should find it difficult to say that the language did not include a partner in a firm carrying on such a business and who by reason of his interest might be led into the physical risks of the business even if temporarily he should suspend his active participation in the management of

the business.   And in this connection it is to be noted that
while the risks of which avoidance was sought in the case of
these "extra hazardous" occupations were purely physical
risks, the objections which the appellant might feel to having
a beneficial member engaged in the liquor business might fill
a wider range and not be limited to physical contact with the
business.

As was stated at the outset no controlling authority has
been cited or found which is decisive of the meaning of this
by-law as applied to such facts as the present ones.   The case
of *Tucker* v. *Knights of Maccabees* (128 App. Div. 918 ; affd.,
198 N. Y. 577), however, proceeds quite a distance in the direc-
tion of determining as claimed by appellant that this by-law is
not of the limited meaning urged by respondent.   In that
case it was held as matter of law that if it was simply estab-
lished that the decedent entered into a partnership engaged
in the management of a hotel containing a bar at which
liquors were sold and a liquor tax certificate was issued to the
decedent and from time to time renewed for the benefit of
the copartnership, the decedent was engaged in the sale of
liquors within the prohibition of a by-law similar to the pres-
ent one, although expressly appearing that he never purchased
supplies for the bar or sold any liquor thereat, and a request
to go to the jury on the question of engagement was denied.

Evidence was given tending to establish that before the
last certificate here involved was issued by the appellant, the
beneficial member retired from the saloon business and turned
his interest over to his son and it is, therefore, claimed that for
this reason said certificate was not subject to the provisions of
the by-law.   In this case, however, we think that it is apparent
that the last certificate mentioned was simply issued in the
place of a prior certificate for the purpose of designating a
new beneficiary, and that on the evidence as now presented
there is nothing to indicate that any greater rights were
secured under the new certificate than existed under the one
taken up, or that the issue of the later certificate operated as
a waiver of any forfeiture which arose while the earlier cer-

tificate was outstanding. In fact, no such claim as that of waiver was made on the trial.

In accordance with these views, we think that the judgment must be reversed, and a new trial granted, costs to abide event.

Cullen, Ch. J., Vann, Werner, Willard Bartlett and Chase, JJ., concur.

Judgment reversed, etc.