# JOSEPH GERONIME and Others v. GERMAN ROMAN CATHOLIC AID ASSOCIATION OF MINNESOTA.[1]

October 30, 1914.

Nos. 18,850—(104).

**Mutual benefit association — forfeiture of membership.**

A death benefit certificate issued by a mutual aid association, wherein it was provided that all obligations thereunder should cease if the member "at the time of his death belonged to a secret non-Catholic aid association or for any reason could not be considered as a rightful and reputable member of his respective society or this association," *held*, when construed, as required, most favorably to assured, not forfeited by his membership in a secret aid association open to Roman Catholics, sanctioned by their actual membership, and not shown to have been disapproved by that church, though in no way affiliated therewith.

Action in the district court for Ramsey county to recover $1,000 upon defendant's benefit certificate upon the life of Barth Geronime, deceased. The facts are stated in the opinion. The case was tried before Dickson, J., who granted plaintiffs' motion for a directed verdict in their favor for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*O. E. Holman,* for appellant.

*Douglas, Kennedy & Kennedy,* for respondent.

PHILIP E. BROWN, J.

Action by the beneficiaries to recover on a mutual benefit insurance certificate issued by defendant upon the life of Barth Geronime. Plaintiffs prevailed, and defendant appealed from an order denying its alternative motion.

The facts are undisputed. Assured made written application for admission to defendant order, declaring therein that he was a prac-

[1] Reported in 149 N. W. 291.

tical Catholic and not a member of any secret non-Catholic benevolent association, and agreeing that these statements should be the basis of the contract between himself and defendant. Pursuant thereto he become a member of one of defendant's subordinate societies, and in 1908 received a certificate of insurance in the sum of $1,000. It was written in the German language and, according to the translation, provided, among other things not material, that if the member "at the time of his death belonged to a secret non-Catholic aid association or for any reason could not be considered as a rightful or reputable member of his respective society or this association," according to their constitution and by-laws, all obligations under the certificate should cease. In 1911 assured became a member of and received a $600 insurance certificate from the Mystic Workers of the World, a secret, nonsectarian aid association, whose membership was in no way restricted by considerations of religious belief or affiliation, but which in fact included Roman Catholics, both laymen and clergymen. Nor was it in anywise controlled by or connected with any church. Assured paid all dues and assessments required by both orders up to the time of his death, which occurred in 1912, and was never suspended or expelled from either. There is nothing in the record to indicate that assured was not at all times after he joined defendant's society and association "a rightful" and "reputable member" thereof. The sole defense was that his membership in the other association constituted a violation of the first quoted clause of the contract, thus working a forfeiture of the certificate. It is but fair to say at the outset that defendant's case has been candidly presented, for the purpose of obtaining an authoritative construction of these words, rather than to avoid liability. That this may be accomplished assured's application for membership in the defendant society, already referred to, will be considered as being in evidence, though, upon plaintiffs' objection, it was excluded on the trial.

Plaintiffs' contention that the clause in question is invalid as being against public policy is not sustained. (Barry v. Catholic Knights, 119 Wis. 362, 96 N. W. 797); which brings us to the defense based thereon.

No controlling case has been found, and therefore the determination of this question depends upon the application of rules of construction and such aid as may be derived from decisions considering analogous contracts. Such provisions are rarely read literally, one of the most striking examples of the liberal interpretations indulged in favor of the assured being the restricted operation, under judicial construction, of suicide clauses. 2 Dunnell, Minn. Dig. § 4811. In Cook v. Modern Brotherhood of America, 114 Minn. 299, 131 N. W. 334, this court sustained a recovery, and held that the assured, a mining brakeman, whose duty it was to spot "stripping cars," was not a "railway freight brakeman" or "switchman" within a prohibition of the policy, nor engaged in an occupation the duties of which required him "to perform any of the duties belonging * * * to such prohibited occupation," though his employer used a freight engine and system of railway tracks of standard gauge in its mining operations. Similarly, in Hendrickson v. Grand Lodge, A. O. U. W. 120 Minn. 36, 138 N. W. 946, while not expressly so deciding, the court strongly intimated that a common laborer, by accepting temporary employment as a bartender for several weeks, did not thereby "enter into the business or occupation of selling at retail intoxicating liquors as a beverage," within a benefit association by-law imposing a forfeiture therefor.

"The certificate," said Chief Justice Start, in the first case cited, page 302, "if there be any fair doubt as to its meaning, must be construed most strongly against the defendant; for the language used was selected by it for its own benefit."

This declaration accords with the general rule. 29 Cyc. 67. But the doctrine of these cases and the rule stated cannot be invoked unless the words of the policy, when given their fair and ordinary meaning presumptively in the minds of the parties, fail to make the intent clear as to at least some of the language used, and leave that degree of uncertainty which would justify honest differences of opinion and argument between intelligent men as to their meaning. Graves v. Knights of Maccabees, 199 N. Y. 397, 401, 92 N. E. 792, 139 Am. St. 912. Finally:

"If it be left in doubt, in view of the general tenor of the in-

strument and the relations of the contracting parties, whether given words were used in an enlarged or restricted sense, other things being equal, that construction should be accepted which is most beneficial to the promisee." Bacon, Ben. Soc. (3d ed.) § 179.

The prefix "non" denotes mere negation or absence of the thing or quality to which it is applied, and no doubt the word "catholic," wherever used in the policy, means Roman Catholic, in which sense we also will hereinafter employ it. This, however, does not solve the question; for, as we have seen, literality is not decisive. The inquiry must be: Is there such uncertainty as to what a non-Catholic aid association is, within the purview of the policy, that ordinarily intelligent persons might honestly differ in regard thereto? In our opinion there is such. In other words, we think it fairly debatable whether these words were used in a restricted or an enlarged sense, that is, whether they were intended to exclude assured from membership in any secret aid association not composed exclusively of Catholics, as is contended by defendant, or merely to proscribe connection with organizations objectionable to the Catholic Church or discriminating against its members and adherents. Reading the forfeiture clauses together in accordance with the familiar rule, and remembering that it does not appear that defendant was connected with the Catholic Church or that either the laws of the latter or of defendant interdicted membership in associations of the character of the Mystic Workers, it may well be doubted that forfeiture of a policy on account of such membership was contemplated, when assured might, notwithstanding his connection with the last named association, properly be considered a rightful and reputable member of defendant society and allowed to remain therein until his death. No motive is disclosed for prohibiting membership in societies open to Catholics, sanctioned by their actual membership, not disapproved by the church, and of which assured's priest might have been a member; and, construing the provision in question, as we must, most favorably to assured, we decline to declare the forfeiture relied on to defeat recovery herein.

Order affirmed.