Laue v. Grand Fraternity.

---

## LAUE *v.* GRAND FRATERNITY.

### (*Jackson.* April Term, 1915.)

1. **INSURANCE.  Mutual benefit insurance.  Forfeiture.  Residence in prohibited territory.  "Residing."**

The constitution of a fraternal society by which a member agreed in his application to be bound provided that no benefit certificate should be granted to any one residing outside that part of the North American continent between the northern boundary of Mexico and the fifty-fifth parallel of north latitude, and that, if a member should remove from such territory, he should forfeit all right to any disability or death benefit.  A member who had long resided in Memphis, where his wife and children continuously resided, was in Panama from October to December, 1908, and again from February to June, 1910, returning to his home in Memphis at the expiration of each of such periods. *Held* that, construing the constitution strictly against the insurer, and construing the provisions with regard to residence in, and removal from, the specified territory *in pari materia*, the policy was not forfeited by the member's temporary sojourn in Panama;  as the word "residing" referred to the member's domicile, and implied a legal residence, and not a mere transitory existence in the prohibited territory, and the prohibited removal referred, not to a mere removal of the member's person, but to a removal of his residence.   (*Post, p.* 243.)

Cases cited and approved:   Stratton v. Brigham, 34 Tenn., 420; Kellar v. Baird, 52 Tenn., 39; Hascall v. Hafford, 107 Tenn., 355; Fickle v. Fickle, 13 Tenn., 203.

Cases cited and distinguished:   Keelin v. Graves, 129 Tenn., 103; Brown v. Beckwith, 58 W. Va., 140; Springer v. Lewis, 22 Pa., 191; Urquhart v. Smith, 5 Kan., 447; Winslow v. Benedict, 70 Ill., 120.

Constitution cited and construed:   Art. 9, sec. 2; Art. 10, sec. 3.

2. **INSURANCE.**    Construction of contract.    Construing against
   **insurer.**

   Where words are so used in a contract of insurance that their
   meaning is ambiguous or susceptible of two interpretations dif-
   fering in import, that interpretation which will sustain the claim
   of the policy holder and cover the loss should be adopted.
   (*Post, p.* 247.)

   Cases cited and approved:  Life Ins. Co. v. Galbraith, 115 Tenn.,
   471-483; Thompson v. Phenix, etc., Co., 136 U. S., 287; National
   Bank v. Ins. Co., 95 U. S., 673; McNutt v. Va. Fire Ins. Co. (Ch.
   App.), 45 S. W., 61; Conn. Fire Ins. Co. v. Geary, 60 Neb., 338.

   Cases cited and distinguished:  McCarthy v. Catholic Knights, 102
   Tenn., 345; Bates v. Detroit Mut. Ben. Ass'n, 51 Mich., 587;
   Jackson v. N. W. M. R. Ass'n, 78 Wis., 468; Southern Life Ins.
   Co. v. Booker, 56 Tenn., 606; Ins. Co. v. Morris, 71 Tenn., 101;
   Perkins Oil Co. v. Eberhart, 107 Tenn., 409.

3. **INSURANCE.**    Mutual benefit insurance.    Suspension or ex-
   **pulsion.**

   The constitution of a fraternal society provided that the fraternity
   should be composed of a supreme governing council, and a
   board of directors, etc., and that the governing council should
   have power to try any member and expel or otherwise punish
   him.    The by-laws made all the death and disability payments
   expressly subject to an agreement not to remove from the part
   of the North American continent between the northern bound-
   ary of Mexico and the fifty-fifth parallel of north latitude, and
   authorized the directors to cancel any benefit certificate for
   the breach of such covenant.    *Held*, that neither the president
   of the fraternity nor its grand secretary had any authority to
   suspend a member or discontinue the acceptance of his dues
   because of his removal from the specified territory, and a letter
   written a local lodge by the secretary instructing it not to
   receive his dues did not suspend him.    (*Post, p.* 249.)

   Cases cited and approved:  Murray v. Supreme Hive, L. O. M.,
   112 Tenn., 665; Franta, etc., v. Union, 164 Mo., 304; Mazurkie-

Laue v. Grand Fraternity.

wicz v. Soc., 127 Mich., 145; Pepin v. Société, 24 R. ·I., 550; Baxter v. McDonnell, 155 N. Y., 83.

Constitution cited and construed: Art. 1, secs. 2 and 3; Art. 2, secs. 1 and 2.

4. **INSURANCE. Mutual benefit insurance. Suspension or expulsion. Tender of dues.**

Where a fraternal society wrongfully declared a benefit certificate forfeited, and refused to accept dues thereunder, the tender of such dues as they became due until the death of the member kept his rights alive. (*Post*, p. 251.) ·

Cases cited and approved: Day v. Conn. Gen. Life Ins. Co., 45 Conn., 480; True v. Bankers' Life Ass'n, 78 Wis., 287.

5. **INSURANCE. Mutual benefit insurance. Amount of recovery. Deducting unpaid dues.**

Where a fraternal society wrongfully declared a benefit certificate forfeited and refused to accept dues thereunder, but it was kept alive by the tender of dues, the amount of the dues which the society should have received should be deducted from the amount recoverable under the certificate. (*Post*, p. 252.)

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— A. B. PITTMAN, Judge.

CARROLL, SCOTT & FISHER, for plaintiff.

A. J. CALHOUN, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This suit is on a contract of insurance. It is not dis-
puted that such a contract was made, nor is it denied
that it was breached.   But the much debated, and very
debatable, question is:   At whose door must the breach
be laid, and who must suffer its consequences?    The
case is pending on *certiorari,* drawing in question the
action of the court of civil appeals by which a judg-
ment recovered by Clara Laue against the Fraternity
for $1,195 and costs  of suit was reversed, and  her
suit dismissed.   The terms of the contract are not in
dispute.   They are established by certain provisions
of the constitution and by-laws of the Fraternity, by
the statements of an application made to the Fraternity
by Herman Laue, husband of the plaintiff, for issuance
to him of a benefit certificate payable to the plain-
tiff, his wife, in the sum of $1,000, and by the certifi-
cate issued by the Fraternity in compliance with the
application.    The contract so evidenced consists of
mutual covenants of warranty.   By it the Fraternity
was bound to pay Clara Laue $1,000 upon satisfactory
proof of the death of Herman Laue while "this cer-
tificate is in full force;" the quotation, of course, mean-
ing while the contract of insurance, evidenced as afore-
said, was in force.   And by the contract Herman Laue
was bound: (1) To make the payment of beneficial dues
on or before the last secular day of the calendar month
as required; and (2) not to remove. himself from that
part of the North American continent lying between
the northern boundary of Mexico, or the twenty-fifth
parallel of north latitude, and the fifty-fifth parallel

of north latitude.  Laue was also otherwise bound by the contract, but in respect of matters on which no is-, sues are made in this suit, and which therefore need not be stated.

Herman Laue was a native of Germany, and there received his education.  He became a resident of Memphis, in this State, in 1883, and there married in 1885. There he purchased a home and other real estate, reared a family, and his wife and sons have continuously resided in the city of Memphis, and now reside at the home pruchased by him and owned by them.  He was a contractor and carpenter.  In 1902 he became a member of a fraternal order known as the United Moderns.  By that fraternity, on February, 7, 1902, a benefit certifi- cate was issued to him for $1,000, payable to his wife, Clara Laue, the plaintiff in the present suit.  In November, 1903, that fraternity and the defendant in this suit consolidated, and the consolidated body retained the name of the "Grand Fraternity," which order on November —, 1903, issued to Herman Laue a certificate (called a "rider") by which his membership in the fraternity was admitted, and that fraternity assumed payment of all benefits provided for in the certificate which had been issued to him by the United Moderns.

The Grand Fraternity certificate above referred to was, however, surrendered for cancellation in 1907, when he made his application for the benefit certificate which forms a part of the contract on which the present suit is based.  In 1908 he made a visit to Germany to see

his dying mother. He returned to Memphis, but was unable to get employment. Upon assurance that he could obtain employment from the Isthmian Canal Commission if he would go to Panama, he went there and was employed by the commission from October 10, 1908, to December 18, 1908, as a car repairer, with pay at forty-four cents per hour. He returned to Memphis in January, 1909, where he remained with his family until a short time prior to February 2, 1910, when he again went to Panama and began work for the commission as a carpenter on February 2, 1910, and he continued in such employment until June 15, 1910, at pay of fifty-six cents per hour. On the date last named, he was discharged by the commission on account of physical disability. He again reached his home in Memphis on June 22, 1910. During his last stay at Panama, while at work in the car shops, he was accidentally struck in the left eye with a wooden mallet. His wife, the plaintiff, testified that when he reached home on the 22d of June, 1910, he was in a very nervous condition, and "it seemed as if his mind was wandering," but that physically he was in fine condition. At all events; and beyond dispute, Herman Laue was admitted as a patient to the hospital for the insane at Bolivar, Tennessee, from Shelby county, Tennessee, on July 2, 1910. His mental disease when he entered that institution is shown to have been "acute mania," but at the time of his death his mental disease was "maniac depressive." He was very melancholy at the time of his death. He died on December 14, 1910.

His age at the time of his admission to that institution was forty-seven years. The cause of his death is said by the physician in charge of the institution to have been "tubercular enteritis," which malady is defined to be inflammation of the intestines.

Of the fact that Herman Laue was dead the defendant Fraternity was notified by a letter from Dr. Jacobson, collector of the Memphis Branch, No. 207, of that Fraternity. The letter was dated January 3, 1911, and on February 22, 1911, the attorney of Clara Laue, by letter of that date, requested the Grand Fraternity to forward to him blank proofs of death, so that he might make out the proper claim of the beneficiary in the certificate involved in this suit. In the same letter the Fraternity was advised that Herman Laue had died some time prior to the date of that letter. To the letter of the attorney the Grand Fraternity replied, under date of March 1, 1911, that Herman Laue was not a member of it at the time of his death, and that his certificate was therefore absolutely void. Under date of March 26, 1910, Dr. Jacobson, apparently acting as secretary of the Memphis Branch of the defendant fraternal order, No. 207, forwarded to the Grand Secretary of defendant order at Philadelphia a copy of the minutes of the meeting of the Memphis Branch, No. 207, which had been held on March 9, 1910. Through these minutes the grand secretary was advised that Herman Laue was then in Panama and interested in plantations there. In reply to the foregoing letter the grand secretary of the defendant order

132 Tenn.16

by letter under date of April 1, 1910, said in part as follows:

"One thing we note in the copy of the minutes which is important at this time and that is with reference to Frater Herman Laue being in Panama. This is outside of the constitutional limits, and you must not accept payments from him if he is living in that country. The constitution fixes the boundary at the northern boundary of Mexico, and any one residing south of that forfeits their certificate. You will find this restriction under article 9, section 2 of the constitution. Kindly be guided thereby in the case of Frater Laue."

The section of the constitution referred to by the letter of the grand secretary recites, in substance, what was stated in an early part of this opinion as the two covenants made by Herman Laue under the insurance contract in suit as conditions and limitations on all death and liability benefits, and further provides that, if the "frater" or member shall have failed to keep said covenants:

"In each and every case, the frater, for himself and his beneficiary or beneficiaries, shall thereupon forfeit all right to any disability or death benefit from the Fraternity, and his benefit certificate shall be absolutely null and void."

Upon the foregoing forfeiture clause the first defense of the Grand Fraternity was rested in the trial court, and in the court of civil appeals. A second defense is also urged for it, which is, in substance, that by

the letter of the grand secretary above quoted Herman Laue was suspended from, and never reinstated to, membership in the Grand Fraternity. By its third defense it is averred that:

"On the 9th day of March, 1910, at a meeting of the lodge in Memphis, plaintiff in open lodge stated that her husband had purchased a large plantation in Panama, and the lodge received a communication from Panama tendering his resignation as recording secretary of the Grand Fraternity at Memphis, stating that he was unable to attend to the office, and that resignation was accepted, and thereupon, the information being conveyed to this defendant pursuant to its charter and by-laws, it declined to accept any dues from the member, and notified him of his suspension, and he thereupon ceased to be a member entitled to any rights as a beneficiary by reason of the aforesaid removal to Panama."

Passing now to a consideration of the first defense, it is apparent that its validity must depend upon a proper construction of the insurance contract. In his application for the benefit certificate involved in this suit Herman Laue agreed in writing for himself and his beneficiary to comply with, and be bound by, and under and subject to, the charter, constitution, by-laws, rules, and regulations of the Grand Fraternity then in force, and all lawful changes, alterations, or amendments to the same that might thereafter be adopted. Section 2 of article 9 of the constitution of 1908, which

was in force  at the time Laue went to Panama, provides that:

"No benefit certificate shall be granted to any one residing outside of that part of the North American continent lying between the northern boundary of Mexico and the fifty-fifth parallel of north latitude."

And by section 3 of article 10 it is provided that if a member shall have failed to make payment of beneficial dues, etc., or shall have removed from that part of the North American continent, etc., that in each and every such case, he shall for himself and his beneficiary forfeit all right to any disability or death benefit, etc., "all as hereinbefore more fully set out."

The provisions of the constitution just above referred to must, of course, be construed *in pari materia.* The meaning of the words "shall have removed," in section 3, must be read in the light of the meaning of the words "any one residing," in section 2. Manifestly, it was the purpose of section 2 to require that a benefit certificate should only be granted to a person residing in that part of the North American continent in that section described.  The word "residing" implies a legal residence in the territory described, and not a mere transitory existence in that territory.  The object of the Fraternity was that each holder of a benefit certificate should have a local habitation and abode in the territory described, to the end that it might be able to receive from him and others of his class permanent current revenue, and, such being the proper construction of section 2, it would seem to follow that the

removal prohibited by section 3 of article 10 is not a mere removal of the person of the member, but removal of his residence. In other words, we think the contract between the member and the Fraternity was that, whereas he had been admitted to membership in the Fraternity, among other reasons, because of having a fixed abode or residence place in the favored territory, therefore he should not forfeit his membership by a mere removal of his person to the unfavored territory, but should only forfeit his membership by a removal of his fixed place of abode to the unfavored territory.

It is reasonable to hold that the word "residence," as used in section 2, was intended by the parties to have the same meaning as if the word "domicile" had been used in its stead. Speaking on the subject of domicile, it is said:

"We believe, however, that the rule is settled that every one must have a legal domicile somewhere, and that this legal domicile is not changed in law until a new one is acquired. We think the substance of our cases is that, in order to destroy the *status* of a party as the possessor of a domicile once acquired in this State, it must appear that he has removed into another State for the purpose of making it his home, and that his removal for purposes of business, though long continued, will not have the effect of changing his domicile, if he has the purpose of returning to this State upon the completion of the business." *Keelin* v.

*Graves,* 129 Tenn. (2 Thompson), 103, 112, 165 S. W., 232, 235.

See, also, *Stratton* v. *Brigham,* 2 Sneed (34 Tenn.), 420; *Kellar* v. *Baird,* 5 Heisk. (52 Tenn.), 39; *Hascall* v. *Hafford,* 107 Tenn. (23 Pick.), 355, 65 S. W., 423, 89 Am. St. Rep., 952; *Fickle* v. *Fickle,* 5 Yerg. (13 Tenn.), 203.

In *Brown* v. *Beckwith,* 58 W. Va., 140, 51 S. E., 977, 1 L. R. A. (N. S.), 778, 112 Am. St. Rep., 955, it is said:

"It is a legal maxim that every person must have a domicile somewhere; and he can have but one at a time for the same purpose. From this it follows that one cannot be lost or extinguished until another is acquired. . . . When one domicile is definitely abandoned and a new one selected and entered upon, length of time is not important. One day will be sufficient, provided the animus exists."

And in a note to the last case above it is said:

"The question when a person who intends to leave a State permanently, but has not yet done so, becomes a nonresident, has arisen mostly, if not wholly, in two classes of cases, those involving the right to exemptions, and those relating to the issuance of attachments. In the first-named class it has been held, in conformity with the rule that, to effect a change of residence, there must be both intention and act, that an intention to remove from the State at a future time will not defeat a claim to an exemption." *Springer*

v. *Lewis,* 22 Pa., 191; *Urquhart* v. *Smith,* 5 Kan., 447; *Winslow* v. *Benedict,* 70 Ill., 120.

Where words are so used in the contract of insurance that their meaning is ambiguous or susceptible of two interpretations differing in import, that interpretation which will sustain the claim of the policy holder and cover the loss should be adopted. *Life Ins. Co.* v. *Galbraith,* 115 Tenn. (7 Cates), 471-483, 91 S. W., 204; *Thompson* v. *Phenix, etc., Co.,* 136 U. S., 287, 10 Sup. Ct., 1019, 34 L. Ed., 408; *National Bank* v. *Insurance Co.,* 95 U. S., 673, 24 L. Ed., 563; *McNutt* v. *Va. Fire Ins. Co.* (Ch. App.), 45 S. W., 61; *Conn. Fire Ins. Co.* v. *Geary,* 60 Neb., 338, 83 N. W., 78, 51 L. R. A., 698.

"It is an elementary principle that forfeitures are not favored in the law, and, in order to work a forfeiture of the rights of membership in a mutual association, it must clearly appear that such was the meaning of the contract, and the facts upon which a forfeiture is claimed must be proved by the most satisfactory evidence." *McCarthy* v. *Catholic Knights,* 102 Tenn., 345, 353, 52 S. W., 142, 144, citing 3 Am. & Eng. Enc. L. (2d Ed.), 1086; *Bates* v. *Detroit Mut. Ben. Ass'n,* 51 Mich., 587, 17 N. W., 67; *Jackson* v. *N. W. M. R. Ass'n,* 78 Wis., 468, 47 N. W., 733; Benefit Soc. & Life Ins. (Bacon), sec. 198; *Southern Life Ins. Co.* v. *Booker,* 9 Heisk., 606, 24 Am. Rep., 344; *Insurance Co.* v. *Morris,* 3 Lea, 101, 31 Am. Rep., 631.

" 'It is a cardinal rule of construction that all instruments are to be expounded and to have effect given

them according to the manifest intention of the parties, as apparent from the whole instrument or agreement, if not incompatible with established principles of law or policy. . . . When a contract is in writing, and its meaning is plain and unambiguous, its interpretation is a matter of law for the court. But, when the writing is not plain and unambiguous, parol evidence is admissible to ascertain the situation and surrounding circumstances, the nature and quality of the subject-matter,' etc. It is also true . . . that, in cases of doubt, the instrument will be construed most strongly against the person who actually drew up the paper, or in whose behalf it was drawn." *Perkins Oil Co.* v. *Eberhart,* 107 Tenn. (23 Pick.), 409, 415, 64 S. W., 760, 762.

It is a clear and undisputable fact on this record that Herman Laue never intended to remove his fixed place of residence or his domicile from the city of Memphis, which was within the favored territory, to Panama, the unfavored territory. His purpose in going into the unfavored territory was to gain temporary employment, and his absence from his fixed place of residence was intended to be temporary only. For the construction urged by the Fraternity it may be said that the location of the domicile or residence of the family of assured during his two sojourns in Panama was of no concern to the insurer, and that its risk of loss was materially increased by the perils of the prohibited territory and the sojourn of Laue therein. But we answer, while the insurer might have stipu-

lated against such risk, it did not do so in plain terms. It was content to stipulate against a change of his fixed residence or domicile; it was content to assume that he would continue to live where his family lived, and it was too late for it to add by construction a new warranty or covenant to the contract when it found that it had been mistaken in the aforesaid assumption. Laue was entitled to act on the contract as it stood, and to construe it strictly against the insurer, and he did not forfeit his rights by giving that construction to it nor by acting thereon. So we think there is no merit in the first ground of defense.

We think there is no merit in the second defense above set out, for the reason that we have been wholly unable to discover in the constitution or by-laws of the Grand Fraternity any authority whatsoever vesting either the president of the Fraternity or its grand secretary the power to suspend Laue from the benefits conferred upon him by his membership in the order, or to discontinue the acceptance of dues from him. The constitution, in article 1, sets out the purposes of the order. Section 2, article 1, provides:

"The Grand Fraternity shall be composed of a supreme governing and legislative body, known as the governing council; and an executive and administrative body, known as the board of directors; local organizations, known as branches; and such persons as obtain membership according to the constitution and by-laws of the Grand Fraternity. All members, irrespective of sex, shall be known and designated as

'fraters,' and the words 'he,' 'him,' or 'his' wherever used shall be construed to apply to fraters of either sex.''

Article 1, section 3, relates to the corporate seal.

Article 2 and its sections 1 and 2 relate to the duties of the governing council, and in article 2 it is provided, referring to the general council:

"It shall have power to charge, put upon trial, and try any officer or member of the Fraternity, and after trial, by a three-fifths vote of the members present, remove from office, expel from the Fraternity, or otherwise punish as it may adjudge,'' etc.

Therefore we hold that the power to expel Herman Laue from the Fraternity was vested by the constitution not in the grand secretary, and not in the president of the order, but in the governing council of the order, and there is no evidence that the governing council of the order ever exercised its power of explusion against Herman Laue. The remedy of the Fraternity, however, if there had been conduct justifying a forfeiture of his certificate by its member Herman Laue, was not limited to expulsion of him from the order by the council. By section 16 of its by-laws all death and disability payments were declared to be expressly subject to the keeping by the member of sundry covenants therein set out, among which are the payment of dues and the nonremoval of his residence from the favored territory, and by section 7 of the by-laws power was vested in the board of directors to cancel and annul any benefit certificate for any of the causes

specified in section 16 of the by-laws, but the record fails to show that any such action was ever taken by the board of directors.

The record, therefore, does not present a case of the explusion of a member under the laws of the order such as was before the court in *Murray* v. *Supreme Hive L. O. M.,* 112 Tenn. (4 Cates), 665, 80 S. W., 827, where the court said the question was "whether the action of the order . . . was so inequitable and unreasonable that a court of equity will not countenance it, but will restore (the party) to her rights," and that "the rule in such case is that the court will uphold the laws of the organization, and restrict its investigation to the inquiry as to whether such laws have been enforced fairly and without oppression"— citing, among other cases, *Franta, etc.,* v. *Union,* 164 Mo., 304, 63 S. W., 1100, 54 L. R. A., 723, 86 Am. St. Rep., 611; *Mazurkiewicz* v. *Soc.,* 127 Mich., 145, 86 N. W., 543, 54 L. R. A., 727; *Pepin* v. *Société,* 24 R. 1., 550, 54 Atl., 47, 60 L. R. A., 626; *Baxter* v. *McDonnell,* 155 N. Y., 83, 49 N. E., 667, 40 L. R. A., 670.

The case at bar, on the contrary, falls within the first of the following principles: If a company wrongfully declares the policy forfeited and refuses to accept the premium when duly tendered, and to give the insured the customary receipt evidencing the continued life of the policy, the assured has a choice of three courses: He may tender the premium and wait until the policy becomes payable by its terms, and then try the question of forfeiture. *Day* v. *Conn. Gen. Life Ins.*

*Co.*, 45 Conn., 480, 29 Am. Rep., 693; *True* v. *Bankers'
Life Ass'n,* 78 Wis., 287, 47 N. W., 520. He may sue
in equity to have the policy continued in force, or he
may elect to consider the policy at an end and bring
an action to recover the full value of the policy, in
which case the measure of damages is the amount of
the premiums paid, with the interest on each from the
time it was made. Bacon on Benefit Societies, sec.
376.

So we hold that Laue remained a member of the
order notwithstanding the fact that the secretary in-
structed the collector of the local lodge to refuse ac-
ceptance of further premiums from him or his bene-
ficiary. And his rights as a member of the Fraternity
were kept alive, as the record shows, by repeated
tenders at the due dates of his proper dues, made on
his behalf by his wife, plaintiff in the present action.

Neither do we think there is any merit in the third
defense set out above. We have quoted it as it ap-
pears in one of the pleas interposed by the defendant,
but it is not sustained by the evidence in the transcript
before us.

It results that the judgment of the court of civil ap-
peals must be reversed, but we hold that the judgment
recovered by the plaintiff in the circuit court should be
credited by the amount of the proper dues which the
Grand Fraternity should have received from Herman
Laue prior to his death under the contract of insur-
ance, and by-laws of the order, and to the end that
the amount of such credit may be ascertained the cause

Laue v. Grand Fraternity.

is referred to the clerk of this court, with directions to ascertain the aggregate amount of dues so to be credited upon the judgment, and upon the coming in of his report the judgment will go down in this court for the correct amount, with proper interest. With the foregoing modification, the judgment of the circuit court of Shelby county will be affirmed.