[2, 3] But, while that power did exist, there was likewise certain duties imposed upon this municipality. Streets are not alone for the location of hydrants, and, in fact, that is not their primary use. They are for the use of individuals in passing from one locality to another for their business or pleasure. The active duty devolved upon these same authorities to keep this street in a reasonably safe condition for travel. While the power existed to so locate this hydrant as they saw fit, yet that did not lessen their duty to the traveling public or to the plaintiff. If, in the exercise of such power they selected a location which made the use of the street inherently dangerous, then their plain duty arose to safeguard travelers from injury in so using it. This end might be accomplished, by lights or barriers; but, in the absence of all warning, the village cannot escape the consequence of its neglect of a positive duty, by merely asserting an unquestioned right to place the obstruction within the line of travel. The mere right cannot override the plain and positive duty.

In Collett v. Mayor, etc., of New York, 51 App. Div. 394, at page 398, 64 N. Y. Supp. 693, at page 696, the court recognize the justness of this conclusion when they say:

"And it must also appear that, if the defect of the plan is such as to make the street dangerous, some steps have been taken, so far as possible, to remedy the defect, or to advise persons using the highway of the existence of the defect, so as they might protect themselves·against it."

Such I understand to be the rule applicable to cases similar to this, wherein the defense of "governmental function" is involved. A clear question of fact was presented in this particular, and the verdict should not be disturbed.

[4] There is another view, which seems to me to be conclusive against appellant. The moving of this hydrant was a mere incident to the improvement of the sidewalk. This improvement plan was allowed to lie in an incomplete and unfinished condition for months. During such interval the injury was occasioned, and was so caused solely by reason of the unguarded and unfinished manner in which the work was left. I can see no distinction in principle between such facts and those involving injury through the leaving of unguarded trenches or barriers in connection with incomplete improvements. Pettengill v. City of Yonkers, 116 N. Y. 558, 22 N. E. 1095, 15 Am. St. Rep. 442; Storrs v. City of Utica, 17 N. Y. 105, 72 Am. Dec. 437.

The judgment and order appealed from should be affirmed, with costs. All concur.

---

(156 App. Div. 446.)

### RAUBER v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. April 30, 1913.)

1. INSURANCE (§ 339*)—LIFE INSURANCE—OCCUPATION—"ENGAGE."

A warranty in a life policy that insured would not "engage" in any of the extrahazardous "occupations" or employments named, including that of retailing intoxicating liquors, was violated by ownership of an

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

interest in a retail liquor business, though insured did not physically participate in the business.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 879; Dec. Dig § 339.*

For other definitions, see Words and Phrases, vol. 3, pp. 2392–2394; vol. 8, pp. 7749–7751.]

2. INSURANCE (§ 665*)—LIFE INSURANCE—ACTIONS—SUFFICIENCY OF EVIDENCE.
Evidence in an action on a life insurance policy, which warranted that insured would not engage in the extrahazardous occupation of retailing intoxicating liquors, *held* not to show that insured transferred all of his title and interest in a retail liquor business, which was acquired by him.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707–1728; Dec. Dig. § 665.*]

Appeal from Trial Term, Monroe County.

Action by John S. Rauber against the Mutual Life Insurance Company of New York. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

Frederick L. Allen, of New York City, for appellant.
George E. Warner, of Rochester, for respondent.

LAMBERT, J. This is an action upon three life insurance policies. These policies were issued in 1908, after physical examination of the insured, Charles Rauber, and after premiums paid. The applications contained the following agreement:

"I hereby warrant and agree that during the period of one year following the date of issue of the contract of insurance, for which application is hereby made, I will not engage in any of the following extrahazardous occupations or employments: Retailing intoxicating liquors, * * * unless written permission is expressly granted by the company."

Prior to April 25, 1910, the plaintiff as a member of a copartnership had been engaged in the wholesale and retail liquor business in Rochester. He was guardian of the insured, his brother, and through such relationship became indebted to him. On that day, in satisfaction of such indebtedness, he transferred to the insured a one-ninth interest in such liquor business, both wholesale and retail. This business was conducted in two departments, but both in the same building. May 24, 1910, for violation by insured of the warranty above quoted, the defendant canceled the policies of insurance and gave notice thereof to both the insured and to the plaintiff, the beneficiary. June 24, 1910, the insured entered into a contract in writing with the appellant for the reinstatement of such policies of insurance. Such contract recited the issuance of the policies in the first instance, the breach of the agreement by insured, his cessation from such retail business, and contained a new agreement upon his part that he should not, at any time during the continuance of such policies or any of them, "engage in the extrahazardous occupation or employment of retailing intoxicating liquors," and provided that

such policies should immediately become null and void in case such agreement was violated. The respondent, at the same time, in writing, acquiesced in such agreement, and such policies of insurance were then reinstated. April 11, 1911, the appellant again canceled these policies, and a week later the insured died. Timely proofs of death were made and upon the refusal of the appellant to pay this action was brought.

Respondent contends that no notice was given him of the second attempted cancellation of such policies, and no criticism is made of the jury verdict in that particular. The defense urged is that the insured, in violation of the agreement of June 24, 1910, continued to engage in the retail liquor business, thereby rendering the policies void. Much evidence was given pro and con as to the physical participation in such business by the insured, and the evidence is sufficient to sustain the verdict in that particular. It is urged, however, that the proof demonstrates that the insured continued to own an interest in such retail liquor business, and that such ownership thereof by him violated the above-quoted clause of the agreement of June 24th.

[1] This presents the interesting legal question as to whether such ownership is sufficient to vitiate the policies, in the absence of physical participation in the business. A very similar situation was presented in the case of Graves v. Knights of Maccabees of the World, 199 N. Y. 397, 92 N. E. 792, 139 Am. St. Rep. 912. While the forfeiture clause there involved is somewhat differently worded, yet in that case the court construed the words "engage" and "occupation," both of which are used in the forfeiture clause under consideration in a broad sense, so as to include one who, although not physically participating, owns an interest in the business. I regard that case as decisive that if Charles Rauber, the insured, continued to own an interest in this retail liquor business, then there can be no recovery in this action.

The trial court refused to charge, at respondent's request, that the forfeiture clause in the agreement of June 24th contemplated only physical participation, and submitted to the jury the question of fact as to whether there had been participation, physical or otherwise. As before noted, the proof is conclusive that on April 24, 1910, the insured did own a one-ninth interest in this business. The sole evidence of any change in such ownership comes from the respondent himself. He testified that the insured was engaged physically in and about the wholesale branch of the business; that the insured was drawing wages and at the same time, with his wages, drew what he pleased from the cash of the concern, and that such excess above the wages was charged against his interest as a matter of bookkeeping; that at the time of insured's death such interest had been fully paid for, except the sum of $469 and some cents, and paid in that manner. The witness characterizes the transaction as being "on the installment plan," and says that payment was being thus made in order to make the burden light for the other members of the former firm.

It is upon the legal effect of this situation that the plaintiff's right to recover depends. If, in fact, at the time of the reinstatement of the policies, the interest that the insured had in the retail business. was conveyed to the other members, and the drawing of money by the insured evidences merely a system of deferred payment therefor, then the judgment should be affirmed. If, on the other hand, the conclusion follows that title to insured's interest passed to the other members only as fast as paid for, so that at the time of his death the insured still owned an interest in this business, there can be no recovery.

[2] The proof as to the transfer of insured's interest is unsatisfactory and, in my judgment, is insufficient to show that insured had parted with all his title in this business. While, perhaps, a formal transfer of his interest, by written instrument, would not be required, yet, it appearing that in April, 1910, he did own an interest, it must be made to appear by more conclusive proof than is presented by this record that he ceased to own such interest, before there can be recovery. It is true that the agreement of June 24, 1910, recites the fact that Charles Rauber, the insured, has ceased to be engaged in retailing liquor. That recital, perhaps, lends color to respondent's contention that, at that time, the insured parted with his interest in the business. It has, however, little probative force.

Upon this phase of the case the jury verdict is contrary to the weight of evidence, and the judgment and order appealed from must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.